Barnard N. Madsen (4626)
Matthew R. Howell (6571)
Scott D. Preston (11019)
FILLMORE SPENCER LLC
3301 N. University Avenue
Provo, Utah 84604
Telephone: 801-426-8200
Facsimile: 801-426-8208
Email:  bmadsen@fslaw.com;
        mhowell@fslaw.com
        spreston@fslaw.com

Attorneys for Plaintiff

---

## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| THE GENERATIONS NETWORK, INC., a Delaware corporation registered to do business in Utah,<br><br>        Plaintiff,<br><br>    vs.<br><br>MILLENNIA CORPORATION, an Arizona corporation, and BTH2, INC., a Utah corporation,<br><br>        Defendants. | **COMPLAINT**<br><br><br><br><br><br><br><br>Case No. 2:08-cv-462 PMW<br><br>Magistrate Judge Paul M. Warner |

Plaintiff The Generations Network, Inc., by and through its attorneys, complains against

Defendants Millennia Corporation and BTH2, Inc. as follows:

## I.  PARTIES, JURISDICTION AND VENUE

1.      Plaintiff The Generations Network, Inc., ("TGN" or "Plaintiff") is a Delaware

corporation registered to do business in Utah with its principal place of business in Provo, Utah.

COMPLAINT - 1

2.      Defendant Millennia Corporation ("Millennia" or "Defendant Millennia") is an Arizona corporation.

3.      Defendant BTH2, Inc. ("BTH2" or "Defendant BTH2") is a Utah corporation.

4.      This Court has subject matter jurisdiction for Plaintiff's causes of action against Defendant Millennia pursuant to 28 U.S.C. § 1332 because there is diversity of citizenship and the amount in controversy exceeds $75,000 exclusive of interest and costs.

5.      This Court also has subject matter jurisdiction for Plaintiff's causes of action against Defendant Millennia pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) because there are federal questions.

6.      This Court has subject matter jurisdiction for Plaintiff's causes of action against Defendant BTH2 pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338(a) because there are federal questions.

7.      This Court has supplemental subject matter jurisdiction for Plaintiff's common law causes of action against Defendants pursuant to 28 U.S.C. § 1367.

8.      Upon information and belief, since 1997 Defendant Millennia has purposely directed its activities at residents of the State of Utah using interactive websites to sell products into the State of Utah.

9.      Plaintiff's claims arise out of and relate to Defendant Millennia's activities directed at the State of Utah via Defendant Millennia's interactive http://www.legacyfamilytree.com website, and via Defendant Millennia's affiliated distributor,

COMPLAINT - 2

Amazon.com (see http://www.amazon.com/MILLENNIUM-LFTMB-C-Legacy-Family-Tree/dp/B00153CVOO/ref=pd_bbs_sr_1?ie=UTF8&s=software&qid=1213383464&sr=8-1).

## II.  NATURE OF CLAIMS

This case is about Defendant Millennia intentionally adapting its product name and packaging to resemble Plaintiff's federally-registered trademark and distinctive packaging to confuse consumers about the source of its goods and to profit from Plaintiff's goodwill.

This case is also about Plaintiff's former marketing partner Defendant BTH2 intentionally using Plaintiff's federally-registered trademark and intentionally designing Defendant Millennia's packaging to resemble Plaintiff's distinctive packaging to confuse consumers about the source of Defendant Millennia's goods and to profit from Plaintiff's goodwill.

**A.  Statutory Claims.**  Plaintiff has trademark and trade dress infringement claims, and trademark dilution claims against Defendants under the Lanham Act, including claims for injunctive relief, impoundment and disposition of infringing products and material, Defendants' profits and Plaintiff's damages or statutory damages for willful infringement, and its attorney fees and costs.

**B.  Common Law and Contract Claims.**  Plaintiff also has a tortious interference claim against Defendants for wrongfully interfering with Plaintiff's relationship with existing and prospective customers, breach of contract claims against Defendant BTH2 for using and disclosing Plaintiff's confidential information and violating a noncompetition agreement, for continuing to promote its affiliation with Plaintiff, and for failing to deliver to Plaintiff any and

COMPLAINT - 3

all materials related to its services for Plaintiff, and a breach of the covenant of good faith and fair dealing claim against Defendant BTH2 for using designs it had prepared for Plaintiff as the basis for its designs for Defendant Millennia.

## III. GENERAL ALLEGATIONS

10.    Plaintiff incorporates by reference all preceding and subsequent numbered paragraphs and allegations of this Complaint as though fully set forth herein.

### A.  Plaintiff's Trademark Rights in FAMILY TREE MAKER

11.    Plaintiff's FAMILY TREE MAKER® software was introduced in 1989, has been continuously sold since that time, and is the world's best-selling genealogical software.

12.    Plaintiff's FAMILY TREE MAKER® (words-only) trademark was registered to Plaintiff's predecessor, Broderbund Software, Inc. ("Broderbund"), in the United States Patent and Trademark Office ("USPTO") in 1997 (Reg. No. 2098764).

13.    Although Broderbund had substantially exclusively and continuously used the mark in connection with genealogical software for at least five years before its application, Broderbund did not apply for registration under 15 U.S.C. § 1052(f) (acquired distinctiveness) and disclaimed the words "FAMILY TREE" apart from the entire mark as shown.

14.    Despite continuously using the mark in commerce, Broderbund failed to file a Section 8 declaration of continued use, and its trademark registration was cancelled by the USPTO in 2003.

15.    Broderbund continued to sell its best-selling FAMILY TREE MAKER genealogical software in commerce after its trademark registration was canceled.

COMPLAINT - 4

16.     In 2004, Plaintiff purchased the FAMILY TREE MAKER genealogical software from Broderbund.

17.     In 2005, Plaintiff applied to register the words-only FAMILY TREE MAKER trademark with the USPTO.

18.     In 2006, the words-only FAMILY TREE MAKER trademark was registered to Plaintiff in the USPTO (Reg. No. 3181968) under 15 U.S.C. § 1052(f) based on acquired distinctiveness because of its lengthy and continuous use.  The date of first use in commerce was 4 October 1989.  The mark registered without any disclaimer of its terms.

**B.  2007:  Plaintiff's Packaging - FAMILY TREE MAKER® 2008 "Essentials"**

19.     In or about 2007, Defendant BTH2, Inc. produced the design for the packaging of Plaintiff's FAMILY TREE MAKER® 2008 Essentials genealogical software.  **Exhibit 1** attached hereto is a true and correct copy of two screenshots from BTH2, Inc.'s current website showing its design of Plaintiff's FAMILY TREE MAKER 2008 packaging.

20.     In or about September 2007, Plaintiff's FAMILY TREE MAKER® 2008 "Essentials" genealogical software package consisted of a 7½-inch by 5¼-inch by 1½-inch box with a flap front that opens to reveal additional pages of text and graphic design elements.

21.     Elements of the FAMILY TREE MAKER® 2008 "Essentials" packaging include:

FRONT:

    a.   A white and orange color scheme with black, gray, and orange text;

    b.   Italicized black text across the top;

    c.   Orange leaves as the dominant graphic element;

d.  Plaintiff's registered words-only mark FAMILY TREE MAKER® as the dominant text element with the words FAMILY TREE in larger dark text and MAKER® in smaller orange text underneath the word TREE;

e.  The word "Essentials" in small orange italic text over the word TREE;

f.  Three photographs on top of the leaves, the top one in color and the other two in sepia tone; and

g.  Bulleted lines of italic text underneath the word FAMILY containing the words "easily", "create" and "charts" in that order;

TOP AND SIDES:

h.  A white and orange color scheme with black, gray and orange text;

i.  Plaintiff's registered words-only mark FAMILY TREE MAKER® as the dominant text element with FAMILY TREE in a dark font, and MAKER® in a lighter orange font;

j.  The word ESSENTIALS in white text on an orange background near the bottom on the two sides of the package; and

k.  A three-pronged "leaf" logo on both sides of the package;

BOTTOM:

l.  A copyright notice:  "© 2007 The Generations Network.  All rights reserved."

m.  A trademark notice:  "Family Tree Maker and Ancestry.com are trademarks of The Generations Network.  All rights reserved."

COMPLAINT - 6

**Exhibit 2** attached hereto is a true and correct copy of this FAMILY TREE MAKER® 2008 "Essentials" package.

### C.  Defendant Millennia's Trademark Rights in LEGACY

22.     In 1997, Defendant or its predecessor registered LEGACY as a trademark with the USPTO (Reg. No. 2095990), and began selling LEGACY® genealogical software.

### D. 1997-2008:  The Development of Defendant Millennia's Packaging

### 1.  1997:  Plain and Simple "LEGACY 2.0"

23.     In 1997, Defendant Millennia's packaging labels consisted of the word LEGACY with a "2.0" and the words "Family History Software" in much smaller text underneath.  **Exhibit 3** attached hereto contains true and correct copies of specimens Defendant submitted to the USPTO with its 1997 LEGACY trademark application.

### 2.   The "Legacy" from LEGACY:   A MORMON JOURNEY in Elements of Defendant Millennia's Website and Packaging

24.     In 1990, The Church of Jesus Christ of Latter-Day Saints began showing a movie called LEGACY:  A MORMON JOURNEY at its newly-opened 500-seat Legacy Theater in the Joseph Smith Memorial Building in Salt Lake City, Utah.  Admission was free, and over the ten years of its 9-daily public performances, hundreds of thousands of Latter-day Saints and others viewed the film.

25.     Housed in the same building and near the entrance to the Legacy Theater has been a family history center of the LDS Church which has been used by tens of thousands of patrons

over the same period, namely 1990-2000.  Those patrons were prospective customers for Defendant Millennia's LEGACY genealogical software program.

26.    The movie poster and promotional materials for LEGACY:  A MORMON JOURNEY consisted of LEGACY in a stylized white script font with faded orange shading, with the script superimposed over clouds of a sunrise or sunset with a horse-drawn covered wagon, pioneers, and trees and other vegetation silhouetted against the sky.  This same depiction is also on the packaging of the DVD released in 2004.  **Exhibit 4A** attached hereto is a true and correct copy of this DVD packaging.

27.    The banner at the top of Defendant Millennia's current website pages also depicts LEGACY in a stylized black script font superimposed over clouds of a sunrise or sunset, and superimposed over a larger LEGACY in a stylized white script font, with a silhouette of a house and trees and other vegetation against the sky.  **Exhibit 4B** attached hereto is a true and correct copy of this banner from Defendant Millennia's website.

### 3.  2000:  Defendant Added FAMILY TREE to Its LEGACY® Packaging

28.    In or about 2000, Defendant Millennia's packaging consisted of the word LEGACY® in a large stylized white script font on a blue background with a vertical pedigree chart superimposed on clouds of a sunrise or sunset projecting up from the silhouette of a house at the bottom of the package toward the word LEGACY.  Upon information and belief, for the first time in its 2000 packaging, Defendant added FAMILY TREE in smaller text below and to the right of the word LEGACY.

**4.  2003-2008:  Defendant Millennia Continued to Use LEGACY® as The Dominant Text Element of Its Packaging**

29.    In or about 2003, LEGACY®, in a large stylized script text, remained the dominant text element of the packaging of Defendant Millennia's version 4.0 software.  **Exhibit 5** attached hereto is a true and correct copy of a specimen Defendant submitted to the USPTO with its 2003 LEGACY trademark renewal.

30.    LEGACY® continued to be the dominant text element of versions 5.0, 6.0, and 7.0 of Defendant Millennia's genealogical software through the beginning of 2008.

**5.  Defendant BTH2, Inc.:  the Bridge Between Plaintiff and Defendant Millennia's Similar Designs**

31.    In or about 2007, Defendant BTH2, Inc. was the designer of Plaintiff's FAMILY TREE MAKER® 2008 "Essentials" packaging.  On its website, as of the date of this Complaint, BTH2, Inc. still promotes its connection with Plaintiff, its design of the FAMILY TREE MAKER packaging, and a related direct mail piece.  BTH2, Inc. states on its website:  "To help promote the latest version of Family Tree Maker, BTHtwo [sic] developed and designed this direct mail piece, which helped drive sales."  See **Exhibit 1**.

32.    On or about 2008, Defendant BTH2, Inc. designed the packaging and became a manufacturer, publisher, and distributor for Defendant Millennia's LEGACY FAMILY TREE 7.0 genealogical software.

/////

/////

COMPLAINT - 9

**6.   May  2008:   LEGACY  FAMILY  TREE  Version  7.0 - Defendants' Willful Trademark and Trade Dress Infringement**

33.     In or about May 2008, Defendants changed the design of Defendant Millennia's packaging so that its LEGACY FAMILY TREE Version 7.0 genealogical software package was similar to the FAMILY TREE MAKER 2008 "Essential" packaging in the following ways: a 7½-inch by 5¼-inch by 1-5/8-inch box with a flap front that opens to reveal additional pages of text and graphic design elements.

34.     Elements of the LEGACY FAMILY TREE Version 7.0 software package also include the following:

FRONT:

a.   A white and orange color scheme with brown and gray text;

b.   Italicized black text across the top;

c.   The words FAMILY TREE in large dark text as the dominant text element of the packaging, with "#1 Rated Family History Software" in small white text on an orange banner underneath;

d.   The word "Legacy" (without the ® symbol) in small orange italic text over the word FAMILY;

e.   Three photographs on top of the leaf, the top one in color and the other two in sepia tone; and

f.   Bulleted lines of italic text underneath the word FAMILY containing the words "easily", "create" and "charts" in that order;

TOP AND SIDES:

g.   A white and orange color scheme with black, brown and orange text;

h.   FAMILY TREE is the dominant text element in a dark font; and a fairly large orange maple leaf is centered near the bottom on the two sides of the package;

BOTTOM:

i.   A copyright notice (in part):  "All Rights Reserved.  © Millennia Corporation."

j.   A trademark notice (in part):  "Legacy is a registered trademark of Millennia Corporation."

**Exhibit 6** attached hereto is a true and correct copy of this LEGACY FAMILY TREE Version 7.0 package

### 9.   May 2008:   The Australian Connection - Evidence of Defendant Millennia's Intent to Confuse

35.   Until May 2008, Mindscape Asia Pacific Pty Ltd ("Mindscape") was Plaintiff's distributor of FAMILY TREE MAKER software in Australia and New Zealand.

36.   In May 2008, Plaintiff terminated its distributor arrangement with Mindscape.

37.   In May 2008, Mindscape continued to use its www.familytreemaker.com.au website to promote itself as "Home of the family tree maker in Australia and New Zealand." **Exhibit 7** attached hereto is a true and correct copy of a screenshot of this Mindscape web page.

38.   However, instead of marketing Plaintiff's FAMILY TREE MAKER software, Mindscape began promoting Defendant Millennia's "LEGACY FAMILY TREE Version 7.0" with the packaging described in paragraph 34, above, as "Coming June 2008".

**FIRST CAUSE OF ACTION**
**Against Both Defendants**
**Lanham Act – Trademark Infringement**
**(15 U.S.C. §§ 1114, 1116, 1117)**

39.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

40.     Plaintiff is the federal registrant of the FAMILY TREE MAKER words-only trademark in connection with genealogical software.

41.     Defendant Millennia is the federal registrant of the LEGACY words-only trademark in connection with genealogical software.

42.     Beginning on or about 2006, but not later than May 2008, Defendants have used the confusingly similar LEGACY FAMILY TREE mark, with Defendant Millennia's federally-registered LEGACY mark in small text and FAMILY TREE in large text, to sell Defendant Millennia's genealogical software program.

43.     As a result of Defendants' trademark infringement, Plaintiff has been damaged and is likely to be further damaged.

44.     Plaintiff is therefore entitled to injunctive relief, impoundment and disposition of infringing products and material, statutory damages for willful infringement, and its attorney's fees and costs.

WHEREFORE, Plaintiff requests the relief described below.

COMPLAINT - 12

**SECOND CAUSE OF ACTION**
**Against Both Defendants**
**Lanham Act – Deceptive Trade Practices / Trade Dress Infringement**
**(15 U.S.C. § 1125(a)(1)(B))**

45.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

46.     Since 1989, Plaintiff or its predecessors have sold FAMILY TREE MAKER genealogical software.

47.     Plaintiff's trade dress in 2007, as described in paragraph 21, above, was inherently distinctive or had become distinctive through secondary meaning.

48.     Beginning on or about May 2008, Defendants have used a LEGACY FAMILY TREE name to identify Defendant Millennia's genealogical software, and have used symbols, devices, and elements of Plaintiff's trade dress on Defendants' packaging that are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, association, origin, or sponsorship of Defendant Millennia's goods with Plaintiff's federally-registered FAMILY TREE MAKER trademark and its distinctive trade dress and packaging.

49.     Defendants' acts described in paragraph 48, above, were and are willful.

50.     Plaintiff's trade dress is not functional.

51.     As a result of Defendants' actions, Plaintiff has been damaged and is likely to be further damaged.

52.     Plaintiff is therefore entitled to injunctive relief, impoundment and disposition of infringing products and material, statutory damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney's fees.

COMPLAINT - 13

WHEREFORE, Plaintiff requests the relief described below.

## THIRD CAUSE OF ACTION
### Against Both Defendants
### Lanham Act – Deceptive Trade Practices
### (15 U.S.C. § 1125(a)(1)(A))

52.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

53.     Beginning on or about May 2008, Defendants have claimed on a "Quickstart" insert in the LEGACY FAMILY TREE Version 7.0 package that "Legacy Family Tree is a registered trademark of Millennia Corp."

54.     The statement that "Legacy Family Tree is a registered trademark of Millennia Corp." is false.

55.     This statement "Legacy Family Tree is a registered trademark of Millennia Corp." is likely to cause confusion, or to cause mistake, or to deceive as to the origin, sponsorship, or approval of Defendant Millennia's LEGACY FAMILY TREE genealogical software.

56.     Defendants' act described in paragraph 53, above, was and is willful.

57.     As a result of Defendants' actions, Plaintiff has been damaged and is likely to be further damaged.

58.     Plaintiff is therefore entitled to injunctive relief, impoundment and disposition of the infringing material, statutory damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney's fees.

WHEREFORE, Plaintiff requests the relief described below.

### FOURTH CAUSE OF ACTION
### Against Both Defendants
### Lanham Act -- Trademark Dilution
### (15 U.S.C. § 1525(c))

59.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

60.     On or before 2008, Plaintiff's FAMILY TREE MAKER words-only mark had become a famous mark through acquired distinctiveness, and continues to be a famous mark.

61.     Not later than May 2008, Defendants' use of LEGACY FAMILY TREE in commerce has been likely to cause dilution by blurring of Plaintiff's famous FAMILY TREE MAKER mark.

62.     Defendants' dilution by blurring was willfully intended by Defendants to trade on the recognition of the famous mark.

63.     As a result of Defendants' trademark dilution, Plaintiff is entitled to injunctive relief, impoundment and disposition of infringing products and material, Defendants' profits, Plaintiff's damages, and its attorney's fees and costs.

WHEREFORE, Plaintiff requests the relief as described below.

### FIFTH CAUSE OF ACTION
### Against Both Defendants
### Tortious interference with existing and prospective economic relations

64.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

65.     Defendants' violations of the Lanham Act constitute intentional interference with Plaintiff's existing and potential economic relations, for an improper purpose (namely, to

COMPLAINT - 15

appropriate Plaintiff's customers) or by improper means (namely, the violations of statutory law as described), and have caused injury to Plaintiff.

66.     In all this, Defendants' actions in violation of Plaintiff's rights were willful and wanton.

67.     As a result of Defendants' tortious interference, Plaintiff is entitled to recover damages against Defendants in an amount to be proven at trial, together with punitive damages, plus interest and costs, and its attorney's fees.

WHEREFORE, Plaintiff requests the relief as described below.

**SIXTH CAUSE OF ACTION**
**Against Defendant BTH2**
**Breach of Contract -- 11 December 2006 Professional Services Agreement**

68.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

69.     On 11 December 2006, Plaintiff and Defendant BTH2 entered a Professional Services Agreement ("PSA").

70.     Paragraph 1(a) and Exhibit A of the PSA defined the "Services" to be provided by Defendant BTH2 "to include, but … not be limited to:  Redesign of Family Tree Maker packaging".

71.     Paragraph 4(a)(ii) of the PSA defined "Confidential Information" to include "designs, drawing" and "marketing materials or plans".

72.     Paragraph 4(a)(i) of the PSA states, in pertinent part:

    … Consultant shall not and shall not permit any third party to use or disclose the Confidential Information for its own commercial benefit or gain, including in

COMPLAINT - 16

connection with any activity that would cause Consultant to be in violation of Sections 6 or 9 of this Agreement, or otherwise for any purpose not expressly permitted herein. …

73.     Paragraph 4(d) of the PSA states:

        Upon the termination of this Agreement for any reason, or at any other time on the Company's request, Consultant will deliver to the Company all of the Company's property, including but not limited to all electronically stored information and passwords to access such property, or Confidential Information that Consultant may have in Consultant's possession or control.

74.     Paragraph 5(a) of the PSA states:

        Consultant agrees that all copyrightable material, notes, records, *drawings*, *designs*, inventions, improvements, developments, discoveries and trade secrets conceived, discovered, developed or reduced to practice by Consultant during the Term, whether on its own or in collaboration with others, that relate in any manner to the business of the Company and that are conceived, discovered, developed or reduced to practice in connection with the performance of the Services hereunder (collectively, "<u>Inventions</u>") are and will remain the sole property of the Company.  Consultant agrees to assign (or cause to be assigned) and hereby assigns fully to the Company all Inventions and any copyrights, patents, mask work rights or other intellectual property rights relating to the Inventions.

75.     Paragraph 6(b) of the PSA states:

        In consideration of, among other things, the Company agreeing to enter into this Agreement with Consultant and to provide Consultant with access to the Confidential Information, including but not limited to the Company's trade secrets and proprietary know-how, Consultant agrees that it will not, without prior notice to and the prior written consent of the Company, perform for any third party any services which are the same or substantially similar to the Services performed by Consultant hereunder, at any time during the Term and for a period of twelve (12) months following the earlier to occur of (i) the expiration of the Term and (ii) the termination or cancellation of this Agreement for any reason. Consultant acknowledges that the obligations in this Section 6 are ancillary to Consultant's confidentiality obligations under Section 4.

76.     Paragraph 7(a) of the PSA states:

The term of this Agreement will begin on the Effective Date and will continue until the earlier of (i) December 31, 2007 and (ii) the termination or cancellation of this Agreement pursuant to Section 7(b) below (the "Term").

77.     The PSA expired on 31 December 2007.

78.     Paragraph 7(e) of the PSA states:

The provisions of Section 3 (regarding Consultant's status as an independent contractor of the Company only), 4, 5, 6, 8, 9, 10 and 11, and the parties' respective rights and obligations thereunder, will survive the expiration or earlier termination of this Agreement for any reason.

79.     Defendant BTH2 breached the PSA by retaining Confidential Information, as specifically defined in the PSA (namely, "designs, drawing" and "marketing materials or plans"), using and disclosing such Confidential Information to a third party (namely, Defendant Millennia) for its own commercial benefit and gain, and provided substantially similar services for Defendant Millennia within twelve (12) months after the expiration of the PSA.

80.     As a result of Defendant BTH2's breach, Plaintiff has been damaged.

81.     Plaintiff is therefore entitled to damages with interest, and to its attorney fees and costs.

WHEREFORE, Plaintiff requests the relief as described below.

### SEVENTH CAUSE OF ACTION
### Against Defendant BTH2
### Breach of Contract – 3 March 2008 Settlement Agreement

82.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

COMPLAINT - 18

83.     On 3 March 2008, Plaintiff and Defendant BTH2 entered an agreement ("Agreement"), in paragraph 5.1.1 of which Defendant BTH2 agreed to "immediately cease any and all activity related to [Plaintiff] marketing and/or sales development" and that "within 10 business days [BTH2 would] deliver to [Plaintiff] any and all materials obtained from [Plaintiff] and any and all [Plaintiff-]related materials in "BTH2's" possession, custody, or control."

84.     Paragraph 3.2.2 of the Agreement provides that "[i]n the event of litigation or arbitration relating to this Agreement, the prevailing Party or Parties shall be entitled to recover reasonable attorneys' fees and costs."

85.     Plaintiff performed its obligations under the terms of the Agreement.

86.     Defendant BTH2 breached the Agreement in the following ways:

   a.   As of the date of this Complaint, on its website Defendant BTH2 still promotes its connection with Plaintiff, its design of the FAMILY TREE MAKER packaging, and a related direct mail piece.  Defendant BTH2 states on its website:  "To help promote the latest version of Family Tree Maker, BTHtwo [sic] developed and designed this direct mail piece, which helped drive sales."  See http://www.bth2.com/13a.html and http://www.bth2.com/14a.html;

   b.   Defendant BTH2 failed to deliver to Plaintiff within 10 business days any and all Plaintiff-related materials in its possession, custody, or control.

87.     As a result of Defendant BTH2's breach, Plaintiff has been damaged.

COMPLAINT - 19

88.     Plaintiff is therefore entitled to damages in an amount to be proven at trial with interest, and to its attorney fees and costs.

WHEREFORE, Plaintiff requests the relief as described below.

### EIGHTH CAUSE OF ACTION
### Against Defendant BTH2
### Breach of the Covenant of Good Faith and Fair Dealing

89.     Plaintiff incorporates by reference all preceding and subsequent paragraphs and allegations of this Complaint as though fully set forth herein.

90.     On 11 December 2006, Plaintiff and Defendant BTH2 entered a Professional Services Agreement ("PSA") pursuant to which Defendant BTH2 designed certain packaging for Plaintiff's FAMILY TREE MAKER genealogical software programs.

91.     On 31 December 2007, the PSA terminated.

92.     After 31 December 2007, Defendant BTH2 breached the implied covenant of good faith and fair dealing in the PSA by using designs it had created for Plaintiff in the design of packaging for Defendant Millennia's LEGACY FAMILY TREE Version 7.0 genealogical software, thereby depriving Plaintiff of the expected benefits of the PSA.

93.     As a result of Defendant BTH2's breach of the implied covenant, Plaintiff has been damaged in an amount to be proven at trial.

WHEREFORE, Plaintiff requests the relief as described below.

### IV.  PRAYER

WHEREFORE, Plaintiff respectfully requests the following relief:

COMPLAINT - 20

### FIRST CAUSE OF ACTION
### Lanham Act – Trademark Infringement
### (15 U.S.C. §§ 1114, 1116, 1117)

Injunctive relief, impoundment and disposition of infringing products and materials, Defendants' profits, Plaintiff's damages, treble damages for willful infringement or (by election before judgment) statutory damages in the amount of $1,000,000 for willful use of a counterfeit mark, and interest, costs, and attorney fees.

### SECOND CAUSE OF ACTION
### Lanham Act – Deceptive Trade Practices/Trade Dress Infringement
### (15 U.S.C. § 1125(a)(1)(B))

Injunctive relief, impoundment and disposition of infringing products and material, statutory damages for willful infringement, plus interest and costs, in an amount to be proven at trial, and to its attorney fees.

### THIRD CAUSE OF ACTION
### Lanham Act – Trademark Dilution
### (15 U.S.C. § 1125(c))

Injunctive relief, impoundment and disposition of infringing products and materials, Defendants' profits, Plaintiff's damages, interest, costs, and attorney fees.

### FOURTH CAUSE OF ACTION
### Tortious Interference

Damages against Defendants in an amount to be determined at trial, together with punitive damages, plus interest, costs, and attorney's fees.

//////

/////

/////

COMPLAINT - 21

**FIFTH CAUSE OF ACTION**
**Breach of Contract**

Damages against Defendant BTH2 in an amount to be determined at trial, plus interest, costs, and attorney fees.

**SIXTH CAUSE OF ACTION**
**Breach of Contract**

Damages against Defendant BTH2 in an amount to be determined at trial, plus interest, costs, and attorney fees.

**SEVENTH CAUSE OF ACTION**
**Breach of Contract**

Damages against Defendant BTH2 in an amount to be determined at trial, plus interest, costs, and attorney fees.

**EIGHTH CAUSE OF ACTION**
**Breach of the Covenant of Good Faith and Fair Dealing**

Damages against Defendant BTH2 in an amount to be determined at trial, plus interest and costs.

RESPECTFULLY submitted this 16th day of June, 2008.

FILLMORE SPENCER LLC

/s/ Barnard N. Madsen_____
By:  Barnard N. Madsen
      Matthew R. Howell
      Scott D. Preston
Attorneys for Plaintiff The Generations Network, Inc.

Plaintiff's Address:
The Generations Network, Inc.
360 West 4800 North
Provo, UT 84604

COMPLAINT - 22